1

2

3

4

5

6                        UNITED STATES DISTRICT COURT
                         EASTERN DISTRICT OF WASHINGTON

7

8   MAXIMILLIAN SALAZAR III,          )
                                      )      NO.  CV-12-0186-LRS
9                  Plaintiff,         )
                                      )      **ORDER RE DEFENDANTS' MOTION**
10       -vs-                         )      **FOR RECONSIDERATION**
                                      )
11  MONACO ENTERPRISES, INC.; and     )
    GENE MONACO and MARTI MONACO,     )
12  Husband and wife and the marital  )
    community thereof; and ROGER      )
13  BARNO and NOELLE BARNO, Husband   )
    and wife and the marital          )
14  community thereof; and STRATEGIC  )
    ADVANTAGE, LLC; and STEVE CESARE  )
15  and JANE DOE CESARE, Husband and  )
    wife and the marital community    )
16  thereof,                          )
                                      )
17                 Defendants.        )
                                      )
18  _____  )

19       **BEFORE THE COURT,** is Defendants' Motion For Reconsideration of Order

20  Re: Summary Judgment Motions Hearing (ECF No. 206), noted without oral

21  argument for April 30, 2014 and opposed by Plaintiff on the hearing date.

22  Defendants objected to Plaintiff's untimely filed response and requested

23  that any such submission be stricken pursuant to the Eastern District of

24  Washington local rules, LR 7.1(b).  Defendants ask for the Court to

25  reconsider a discrete component of its Order Re Summary Judgment Motions

26

ORDER - 1

Hearing (ECF No. 206) which requires the Court to consider whether the handbook promised specific treatment in specific situations, and, to the extent such promises exist, whether there is evidence that such promises were relied upon and subsequently breached.

## A.  Defendants' Request to Reconsider Ruling on Handbook Claim

Defendants request that the Court reconsider its oral ruling that a question of fact existed as to whether the language of the Monaco handbook created a promise of future treatment. Defendants challenged Salazar to come forward with admissible evidence of all three components of a prima facie handbook claim.  Defendants argue Salazar failed to show he relied upon the alleged promises contained in the handbook. Defendants assert that their motion for partial summary judgment was filed months prior to the hearing and Plaintiff has failed to timely file an affidavit or make a factual showing that Salazar relied on a specific promise or provision.  Additionally, Defendants assert, even if specific promises of treatment did exist, they were expressly and clearly disclaimed within the contents of the handbook.

Defendants rely on *Francom v. Costco Wholesale Corp.*, 98 Wash.App. 845 (2000), which case they argue precludes Salazar's claim based on Monaco's alleged handbook promises for two primary reasons.  First, Salazar cannot enforce an employer policy because it overlaps with an employer's legal obligations. And second, an employer is not bound by statements in employment manuals if they specifically state in a conspicuous manner that nothing contained therein is intended to be part

ORDER - 2

of the employment relationship but rather are general statements of company policy. *Id* at 867.  Defendants conclude that the policy Salazar seeks to enforce simply does not promise any specific treatment of employees in specific situations, and did not create any obligation by Monaco to do anything other than comply with the law prohibiting retaliation under 31 U.S.C. §3730(h). Defendants add that even if the Court finds that any promise(s) do exist, it was expressly and clearly communicated to Plaintiff that none of the handbook contents constituted terms of an employment contract or created a promise or assurance of continued employment in the future.

Therefore, as a matter of law, Defendants conclude that Monaco is not liable to Salazar under a "handbook" theory.  With its motion for reconsideration, Defendants attach the Affidavit of Molly McLaughlin (ECF No. 219)[1] to provide additional clarity of Salazar's acknowledgment of his "At-Will Employment Status" and his agreement that "the Handbook is for informational purposes only, and that it is not a contract for, or a guarantee of, employment or continuing employment."  ECF No. 219-1.

**B.  Plaintiff's Opposition**

Plaintiff opposes the motion for reconsideration and requests the Affidavit of Molly McLaughlin be stricken, or in the alternative, to

---

[1]Monaco, through the human resources department, distributed a new employee handbook to Salazar containing a signature page where employees sign to indicate they have received the new handbook.  The copy of the handbook Salazar signed for in June of 2011 appears to be the handbook attached to the Gilbert Affidavit (ECF No. 164-2, Ex. B). The McLaughlin Affidavit contains the signature page evidencing Salazar's signature on June 7, 2011.  ECF No. 219-1.

ORDER - 3

consider the Affidavits of Max Salazar (ECF No. 197) and Eric Wesselman
(ECF No. 198), which were filed with the Court to supplement Plaintiff's
summary judgment response the night before the hearing date on February
19, 2014.[2] Plaintiff asserts that promises of specific treatment in
specific situations found in an employee manual or handbook issued to
Plaintiff obligated Defendant Monaco to act in accord with those
promises. Plaintiff argues, at a minimum, the Court is unable to
determine at the summary judgment stage, the effect of the employee
handbooks or manuals issued by Monaco and whether any statements therein
amounted to promises of specific treatment in specific situations. And
if so, whether Plaintiff justifiably relied on any of those promises.
Finally, Plaintiff argues, material fact issues exist whether any
promises of specific treatment were breached by Defendants making summary
judgment improper.

To support his arguments, Plaintiff relies on the *Thompson*[3] case and
various quotations made in one or more employee handbooks that Plaintiff
purportedly relied upon. Plaintiff argues that the handbook makes
specific promises that an employee will not suffer adverse employment
action for raising questions "that concern his/her employment in any
way". ECF No. 162 at 21. Plaintiff further argues that the handbook(s)

___

[2]Defendants objected to the late filed declarations of Maximillian
Salazar III (ECF No. 197) and Eric Wesselman (ECF No. 198) on February
19, 2014. Defendants objected in writing to Plaintiff's late filings (ECF
No. 200) and raised an oral motion to strike the declarations and deny
any consideration of them in ruling on the dispositive motions.

[3] *Thompson v. St. Regis Paper Co.*, 102 Wash.2d 219, 222 (1984)).

ORDER - 4

specifically promise that an employee is encouraged to come forward "without fear of ridicule, retaliation, or reprisal", and he "should feel confident that in no event will he or she be penalized for his or her beliefs ...". *Id.* Plaintiff then argues that these phrases/quotations, combined with the preamble statement: "Monaco retains its management right to terminate an employee at its will, within the confines of our judicial system," is evidence that MEI made promises of specific treatment in specific situations. Id. Plaintiff asserts he justifiably relied on the promise(s) and MEI breached the promises of specific treatment when it terminated him in retaliation for his speaking out about fraud and corruption. *Id.* Plaintiff asserts that under *Thompson,* whether an employment policy manual issued by an employer contains a promise of specific treatment in specific situations, whether the employee justifiably relied on the promise, and whether the promise was breached are questions of fact.

Plaintiff's counsel also states, at the February 20, 2014 dispositive motions hearing, that discovery issues in this case have prevented him from knowing what Defendant Monaco and its Human Resources representatives would say about the handbook claim until a week before the hearing. ECF No. 205 at 48. Counsel further notes that Plaintiff Salazar was not deposed prior to the hearing. *Id.* Therefore, Plaintiff concludes, summary judgment is improper based on the discovery status and factual nature of the elements to be determined for Plaintiff's claim that Defendant Monaco breached promises of specific treatment in specific

ORDER - 5

situations.

**C.  Analysis**

Motions for reconsideration serve a limited function.  Under the Federal Rules of Civil Procedure, motions for reconsideration may be made pursuant to Rule 59(e).  The major grounds for granting a motion to reconsider a judgment are: (1) intervening change of controlling law; (2) availability of new evidence; and (3) the need to correct clear error or prevent manifest injustice. *School District No. 1J, Multnomah County Oregon v. AcandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir.1993).  A motion for reconsideration is not appropriately brought to present arguments already considered by the Court.  *Backlund v. Barnhart*, 778 F.2d 1386, 1388 (9th Cir.1985).  Defendants do not argue that there has been a change of controlling law, or that new evidence is available, but rather suggests that the Court committed error of law or fact and reconsideration is necessary to prevent a manifest injustice.  ECF No. 217 at 2-3.

Generally, employment contracts that are indefinite as to duration may be terminated by either the employer or the employee at any time, with or without cause. *Thompson v. St. Regis Paper Co.,* 102 Wash.2d 219, 223 (1984).  A terminable at will relationship can, however, be contractually modified by an employee policy manual. *Id.* at 229-30; *Swanson v. Liquid Air Corp.*, 118 Wash.2d 512, 520, 826 P.2d 664 (1992). A promise contained in an employee manual of specific treatment in specific situations may be enforceable if an employee relies thereon. *Thompson*, 102 Wash.2d at 223; *Swanson*, 118 Wash.2d at 520; *Toussaint v.*

*Blue Cross & Blue Shield*, 408 Mich. 579, 292 N.W.2d 880 (1980).

An employee handbook or manual may modify the terminable-at-will relationship if it creates an atmosphere of job security and fair treatment by promising specific treatment in specific situations, thereby inducing the employee to remain on the job and not seek other employment. *Thompson*, 102 Wash.2d at 230, 685 P.2d 1081; *Gaglidari v. Denny's Restaurants, Inc.*, 117 Wash.2d 426, 433, 815 P.2d 1362 (1991). Where an employee handbook promises specific treatment in specific situations, an employer may disclaim any intent to be bound by the handbook, and if such a disclaimer is effectively communicated, employees may not justifiably rely upon the handbook provisions. *Birge v. Fred Meyer, Inc.*, 73 Wash.App. 895, 900-01 (1994), *review denied*, 124 Wash.2d 1020 (1994). Therefore, the Court will consider in its analysis whether Monaco's disclaimer effectively communicated that Monaco did not intend to be bound by its handbook.

The Washington Supreme Court in *Burnside v. Simpson Paper Co.* noted that whether an employment policy manual issued by an employer contains a promise of specific treatment in specific situations, whether the employee justifiably relied on the promise, and whether the promise was breached are questions of fact. *Burnside v. Simpson Paper Co.*, 123 Wash.2d 93, 104-05 (1994). "Only if reasonable minds could not differ in resolving these questions, is it proper for the trial court to decide them as a matter of law. *Id*. (*citing Swanson*, 118 Wash.2d at 522).

The Washington Supreme Court in *Korslund v. DynCorp Tri-Cities*

ORDER - 7

*Services, Inc.*, 156 Wash.2d 168, 184–85 (2005) explained that the *Thompson* specific treatment claim is not an implied or express contract claim, but is independent of a contractual analysis and instead rests on a justifiable reliance theory. *DePhillips v. Zolt Constr. Co.*, 136 Wash.2d 26, 34–36, 959 P.2d 1104 (1998); *Swanson*, 118 Wash.2d at 525; *Gaglidari v. Denny's Restaurants*, Inc., 117 Wash.2d 426, 433 (1991); *Thompson,* 102 Wash.2d at 229–30. *Korslund* sets forth a three-step test that applies when the parties have not agreed that the provisions in an employee handbook constitute a contract, as is the situation here. The employee must prove these three elements of the cause of action [for breach of a promise of specific treatment]: (1) that a statement (or statements) in an employee manual or handbook or similar document amounts to a promise of specific treatment in specific situations, (2) that the employee justifiably relied on the promise, and (3) that the promise was breached. *Korsund,* 156 Wash.2d at 178 (citations omitted).

Defendants contend that Salazar's signing the handbook signature page on June 7, 2011, acknowledging that his employment was at will, precludes his justifiable reliance on promises in employee policy manuals as a matter of law. The handbook Salazar received contained the following definitions and acknowledgments:

> This Employee Handbook is not a contract. Accordingly, it should not be interpreted to create any expressed or implied contract between the Company and any employee. **It is expressly stated, and should be understood by all employees, that the contents of this Employee Handbook do not constitute the terms of an employment contract, and do not create any promise or assurance of continued**

ORDER - 8

**employment in the future.** It is also stated that isolated inaccuracies contained in this Employee Handbook do not invalidate the remaining content within this document or the Employee Handbook in its entirety.

**Employment with the Company is on an "at-will" basis. This means that the employment relationship is for an unspecified period of time and may be terminated at-will at any time, either by the employee or the Company for no reason or for any reason not expressly prohibited by law.** This at-will employment relationship, which includes the right to discipline, demote, or transfer an employee with or without advance notice, cannot be changed, modified, waived, or rescinded except by an individual written agreement signed by the employee and the Chief Executive Officer of the Company. This represents an integrated agreement with respect to the at-will nature of the employment relationship. **Any verbal or written representations to the contrary are invalid and should not be relied upon by anyone.** ECF No. 164-2 [emphasis added].

Salazar also signed an acknowledgment on June 7, 2011 that reads, in relevant part:

**ACKNOWLEDGMENT OF AT-WILL EMPLOYMENT STATUS AND RECEIPT OF EMPLOYEE HANDBOOK AND ARBITRATION AGREEMENT**

_____

1. I acknowledge that I have received a copy of the Employee Handbook, have read the Handbook and am familiar with the contents therein. I agree to follow the guidelines and policies contained in the Handbook and any amendments to the Handbook. **It is specifically agreed that the Handbook is for informational purposes only, and that it is not a contract for, or a guarantee of, employment or continuing employment.** I further understand that the Company has the right to revise the policies and procedures in this Handbook at any time. Any such revisions must be in writing. No statements, representations or actions of any employee or executive of the Company will modify these policies

ORDER – 9

and procedures unless they are in writing and signed
by the Chief Executive Officer.

2. I also acknowledge and understand that, unless I
am advised in writing otherwise, my employment is
for no definite period and I am an at-will employee
of the Company. **This means that the terms and
conditions of my employment may be changed at any
time. It also means that I may leave my employment
at any time and the Company may terminate my
employment at any time.**
. . . . .
5. **I understand and acknowledge that this
constitutes the entire agreement between me and the
Company regarding my at-will employment status, and
that it supersedes and replaces any prior written,
oral or implied agreements concerning this subject.**
1 further acknowledge that this integrated at-will
relationship cannot be modified or changed during my
employment except by specific written agreement
between me and the Company, signed by the Chief
Executive Officer.

ECF No. 219-1 [emphasis added].

Defendants assert that handbooks may contain disclaimers which

vitiate alleged promises supporting a handbook employment claim.   To

explain its dispositive argument, Defendants quote from *Thompson* the

following passage:

It may be that employers will not always be bound by
statements in employment manuals.  They can
specifically state in a conspicuous manner that
nothing contained therein is intended to be part of
the employment relationship and are simply general
statements of company policy. Additionally, policy
statements as written may not amount to promises of
specific treatment and merely be general statements
of company policy, and, thus, not binding. Moreover,
the employer may specifically reserve the right to
modify those policies or write them in a manner that
retains discretion to the employer.

ECF No. 150 at 7.

ORDER - 10

This Court agrees with Defendants that the "ACKNOWLEDGMENT OF AT-WILL EMPLOYMENT STATUS AND RECEIPT OF EMPLOYEE HANDBOOK AND ARBITRATION AGREEMENT" signature page, that Salazar signed on June 7, 2011, was conspicuous and clearly stated that statements as written may not amount to promises of specific treatment.  The Court, however, is cognizant of the policy-linked concerns that the Supreme Court of Washington articulated in *Korslund* and the Ninth Circuit in an unpublished memorandum[4] that called into doubt the *Costco* case holding:

> As discussed in *Swanson,* the employment relationship can be altered through the employer's issuance of policy manuals either as a matter of promises of specific treatment in specific situations or as a matter of contract modification, provided, in the latter case, that the formalities of contract formation are met. *Swanson*, 118 Wash.2d at 531-35. It would be inconsistent with *Thompson* and its progeny to conclude that once an application containing an at-will provision is signed, the employer is thereafter free to make whatever promises it wishes to make without any obligation to carry them out.

*Korslund*, 156 Wash.2d at 188.

The Washington Supreme Court in *Korslund* held potentially enforceable a policy forbidding retaliation against whistleblower employees at a nuclear reactor.  Under the reasoning in *Korslund*, an employee that signs a statement that his employment was at will does not necessarily preclude his justifiable reliance on promises in employee policy manuals and thus does not bar his claim for breach of promise of specific treatment in specific situations.

---

[4]*Tracy Jonassen v. Port of Seattle,* 2013 WL 6653683 (C.A.9 (Wash)).

ORDER - 11

This Court is now tasked in this motion for reconsideration with determining whether there is sufficient evidence to create a factual dispute on the question whether Monaco modified the employment relationship with Salazar by issuing its policy manuals with alleged promises of specific treatment in specific situations.

Turning now to the elements of the specific treatment claim, Defendants initially argue that Salazar has not shown that he relied on any specific promises in an employee manual or handbook upon which the specific treatment claim can be based. Although Plaintiff's counsel points out at the hearing that there have been discovery issues, i.e., Salazar had not been deposed and counsel hasn't had a chance to digest the recent depositions of Defendant Monaco and its Human Resources representatives, the fact remains that a declaration of Salazar, filed the night before the hearing, could have been filed months prior. The Court will consider, however, the late-filed Declarations of Salazar (ECF No. 197) and Wesselman (ECF No. 198) in light of the elongated discovery track this case has found itself on. Similarly, the McLaughlin Affidavit (ECF No. 219) filed in support of Defendants' Motion for Reconsideration and objected to by Plaintiff, will also be considered.

The next question is whether there is sufficient evidence that Monaco made promises to Salazar of specific treatment in specific situations. This question brings us to the *Costco* case which Defendants rely upon to argue that with regard to a contract-based claim, the employment handbook contained general policy statements, obligating

Monaco to comply with the law and thus were akin to illusory promises unsupported by consideration. *Costco*, 98 Wash.App. At 867, *citing Crown Plaza Corp. v. Synapse Software Sys.*, Inc., 87 Wash.App. 495, 501, 962 P.2d 824 (1997).   This Court finds that there is no contract-based claim that could go forward under the *Costco* and *Thompson* cases. These cases stand for the notion that an employer can specifically state in a conspicuous manner that nothing contained within an employee handbook is intended to be part of the employment relationship or that such statements are general statements of company policy, or obligations which a company is already held to pursuant to the law or statute.   Such conspicuous disclaimers have occurred in the employee handbook expressly acknowledged by Salazar in June of 2011.   ECF No. 219.

Next is Plaintiff's specific treatment claim,[5] which rests on a justifiable reliance theory.   *Korslund* held potentially enforceable a policy forbidding retaliation against whistleblower employees and that opinion discussed the protections provided under the Energy Reorganization Act.   The *Korslund* opinion, however, did not analyze the substantial overlap between the employer-policy's protections and those accorded by statute.   The *Costco* case did include the overlap in its analysis, which may account for the tension between *Korslund* and *Costco* cases. *Costco* held, and Defendants argued in their Second Motion for Partial Summary Judgment, that when a handbook contains a specific

---

[5]It appears that Plaintiff alternatively argues a contract-based theory and a breached promise of specific treatment in specific situations claim.

promise to comply with employment laws generally, such a generic promise cannot be a basis for a handbook claim as a matter of law. ECF No. 150 at 9.

In its motion for reconsideration, Defendants do not argue whether or not any statements amounted to promises but only that the Court found a question of fact existed in its oral ruling (i.e., whether any statements made in the employment manual were sufficiently specific to constitute promises of treatment) and that Salazar failed to offer timely evidence that he relied upon an alleged promise(s). The Court, therefore, will begin with this first prong of the three-prong test for handbook claims enunciated in *Korslund*. The quotation or "promise" Salazar focused on and which the Court based its ruling upon, was that the handbook(s) specifically promised that an employee is encouraged to come forward "without fear of ridicule, retaliation, or reprisal", and he "should feel confident that in no event will he or she be penalized for his or her beliefs . . .". The Court now analyzes the first alleged promise quotation, in its proper context, pursuant to the motion before it. This statement or quotation is found under the "Grievance Procedure" in the Employee Relations and Conduct Section. ECF No. 164-2, Ex. B. The handbook describes the formal grievance procedure as follows:

> **GRIEVANCE PROCEDURE**
> **The Company realizes that disagreements can occur at work. Rather than have those disputes damage morale, the Company has established a formal grievance procedure which enables employees to address their concerns openly and professionally, without fear of ridicule, retaliation, or reprisal.** The Company will take steps and conduct a prompt and thorough

investigation, and make a good faith determination
about each problem, concern and dispute while
exercising its business judgment.

Problem resolution is often conducted using an
Informal Process. A problem cannot be addressed
unless management knows that one exists. Employees
are encouraged to first seek assistance with
problems or issues by contacting their immediate
supervisor as early as possible unless the
supervisor is the subject of the complaint. If an
employee cannot discuss the problem with his/her
supervisor, then the problem should be discussed
with the Department Manager. The majority of
misunderstandings can be resolved at this level. If
the supervisor's conduct is what concerns the
employee, then the employee should go directly to
Human Resources.

Beyond the Informal Problem Resolution Process, the
Company also has a formal Grievance Process.
Employees who have experienced conduct they believe
is contrary to a [sic] Company policies have an
obligation to take advantage of this grievance
process. **Employees should be aware that it is
possible to lose certain legal rights for failure to
follow the internal complaint procedures of the
Company**. The following steps **must** be taken by an
employee to file a complaint:

. . . .

After the final disposition of the complaint, a copy
shall be placed in the employee's confidential file;
and if the final decision changes any Company
procedure or policy, Human Resources shall make the
necessary changes upon approval of the Department
Manager, or the Chief Executive Officer as
appropriate. **Nothing in this grievance procedure is
intended to create an express or implied agreement
that alters the "at-will" employment agreement**.

. . .

ECF No. 164-2 at 113 [emphasis added].

///

ORDER - 15

The Court finds that this alleged promise quotation Salazar relies on, when read in proper context within the company's grievance procedure, does nothing to alter the at-will employment status under the facts of this case. In the context of the grievance procedure section, it does appear that the quotation "enables employees to address their concerns openly and professionally, without fear of ridicule, retaliation, or reprisal," could be perceived as a promise of specific treatment in a specific situation, i.e., the grievance procedure.

As to the second prong, whether the employee justifiably relied on this promise, reasonable minds could not differ in finding that although the employer appears to promise not to ridicule or retaliate when an employee formally grieves a dispute, the bringing of a grievance or written complaint[6] does not alter the at-will status of employment based on the express and conspicuous disclaimer within the grievance procedure section itself. At a minimum, a "disclaimer must state in a conspicuous manner that nothing contained in the handbook, manual, or similar document is intended to be part of the employment relationship and that such statements are instead simply general statements of company policy." *Swanson v. Liquid Air Corp.*, 118 Wash.2d 512, 527, 826 P.2d 664 (1992). A disclaimer also must be effectively communicated to the employee, who must have reasonable notice that the employer is disclaiming an intent

---

[6]There is no evidence before the Court that Salazar brought a written complaint pursuant to the formal grievance procedure. According to the late-filed Salazar Declaration (ECF No. 197), Plaintiff appears to have started the Informal Process described in the Grievance Procedure section.

ORDER - 16

to be bound by what appear to be promises. The effect of a disclaimer in an employee manual is a question of law under these facts because reasonable minds could not differ. *Swanson*, 118 Wash.2d at 529.

Plaintiff Salazar was an Applications Engineer at Monaco and would certainly be able to understand from the unambiguous disclaimer that Monaco was disclaiming an intent to be bound by what is argued to be an enforceable promise(s). Disclaimers appear throughout the Employee Handbook which the Court finds are "effectively communicated." As in *Fred Meyer*, a disclaimer was within the same page as the statement of policies upon which the employee, Salazar, claimed to have relied. Salazar was required to sign on the acknowledgment signature page as well, acknowledging that the policies did not constitute an employment contract.

Where a disclaimer is effectively communicated, employees may not justifiably rely upon the handbook provisions. *Birge v. Fred Meyer, Inc.*, 73 Wash.App. 895, 900-01 (1994). Therefore, as a matter of law, Salazar cannot satisfy this component of the three-prong test for the handbook claim based on a promise of specific treatment.

As for the second alleged promise quotation, i.e., "should feel confident that in no event will he or she be penalized for his or her beliefs . . .", the Court finds this fails to amount to a promise of specific treatment in a specific situation under the first prong of the test under *Korslund*. Even if it did amount to a first prong promise, reasonable minds could not differ on the justifiable reliance prong as

explained above. In light of the effective disclaimers throughout the handbook, Salazar cannot be said to have justifiably relied on this isolated quotation to be an enforceable policy (promise) that could have been breached.

Having not found, as a matter of law, that Salazar justifiably relied on any promises of specific treatment in specific situations due to what the Court finds as effective disclaimers throughout the handbook, the Court finds that as a matter of necessity, the third element, i.e., breach of a promise, has not been met. Accordingly,

**IT IS HEREBY ORDERED**: Defendants' Motion for Reconsideration, **ECF No. 217,** is **GRANTED** with respect to the discrete component of the Court's Order Re Summary Judgment Motions Hearing (ECF No. 206) addressing the Handbook Claim.  Plaintiff's Handbook Claim is dismissed with prejudice as a matter of law.

**IT IS SO ORDERED.**  The District Court Executive is directed to enter this Order.

**DATED** this 15th day of May, 2014.

*s/Lonny R. Suko*
_____
LONNY R. SUKO
SENIOR UNITED STATES DISTRICT JUDGE

ORDER - 18